**Richard GATEWOOD, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 03A04–0908–CR–449.

Court of Appeals of Indiana.

Feb. 11, 2010.

James A. Shoaf, Columbus, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

barred by double jeopardy protections from retrying Morris. *Speybroeck v. State,* 875 N.E.2d 813, 822 (Ind.Ct.App.2007).

## OPINION

VAIDIK, Judge.

### Case Summary

Richard Gatewood appeals his conviction for Class D felony operating while intoxicated and his status as a habitual substance offender. Specifically, he contends that the evidence is insufficient to prove that he was intoxicated at the time he drove. Although the State presented evidence that Gatewood was intoxicated at 9:00 p.m., when he was found sleeping by his moped, we conclude that it failed to present evidence that he had an impaired condition of thought and action and the loss of normal control of a person's faculties at the time he drove his moped one hour earlier. We therefore reverse.

### Facts and Procedural History

On May 23, 2007, fifty-five-year-old Gatewood drove his moped to Columbus Regional Hospital ("CRH") to visit his mother. Gatewood himself had back surgery at CRH approximately two weeks earlier. Between the back surgery and his existing medical conditions, including metal in both of his feet and metal plates in his ankles, walking was not easy for Gatewood. Two CRH security officers, Richard Crehan and Kelly Branum, were outside the hospital and observed Gatewood arrive at the hospital on his moped. Gatewood was not carrying a bag, but he was wearing a jacket which was large enough to conceal a bottle of alcohol.

According to Crehan, Gatewood drove his moped east on 17th Street and pulled into the south emergency room parking lot of the hospital. Crehan said that Gatewood "stumble[d] a little bit" but that did not alarm him because "a lot of times people do stumble when they come into the E.R. because they are sick or whatever." Tr. p. 63. After Gatewood parked, he entered the hospital.

According to Branum, Gatewood pulled his moped into the south emergency room parking lot around 8:00 p.m. Branum said that Gatewood "looked to be a little bit unstable when he was operating" the moped, had a "difficult time" walking to the emergency room, and "looked like he stopped at the E.R.[ ] triage information desk" but did not know whether Gatewood checked in as a patient or obtained information on a patient. *Id.* at 77.

Neither Crehan nor Branum stopped Gatewood or made any other contact with or observation of Gatewood until about an hour later, when Branum discovered Gatewood lying a few feet away from his moped asleep. Branum had difficulty waking Gatewood up. Gatewood's eyes were red, his speech was slurred, and he had an odor of alcohol about him. Gatewood said he was tired and his moped would not start. Branum did not see any evidence of a bottle or any other container from which Gatewood had been drinking. Branum called the Columbus Police Department to investigate further.

Officer Eric Kapcynski of the Columbus Police Department arrived shortly before 9:00 p.m., which was within minutes of receiving the dispatch. When Officer Kapcynski arrived, Gatewood was asleep and had froth around his mouth. Officer Kapcynski also had trouble waking Gatewood up. Officer Kapcynski asked Gatewood his name and why he was at the hospital. Gatewood reached for his identification in his moped and said that he was there to visit his mother. While Gatewood was reaching for his identification, Officer Kapcynski looked inside the storage compartment of the moped but did not see any bags, bottles, or cans. Gatewood had difficulty staying awake, bloodshot eyes, slurred speech, and an odor of alcohol about him. Officer Kapcynski and one of the security officers tried to stand Gate-

wood up to administer field sobriety tests, but Gatewood was too intoxicated to take the tests. Before standing Gatewood up, Officer Kapcynski searched Gatewood's pockets and did not find any alcohol. In addition, Gatewood erratically vacillated between being angry and apologetic. Gatewood failed a portable breath test and refused to take a chemical test. Worried about Gatewood's health and safety, Officer Kapcynski took him into the hospital for a medical blood draw. Gatewood's BAC was 0.286.

Thereafter, the State charged Gatewood with Class C misdemeanor operating while intoxicated, which was elevated to a Class D felony based upon a prior conviction for OWI, and Class D felony operating while intoxicated with an alcohol concentration equivalent ("ACE") to at least 0.15 grams of alcohol per 100 milliliters of blood. The State also alleged that Gatewood was a habitual substance offender based upon at least two unrelated convictions for OWI.

Gatewood testified in his own defense at trial. Specifically, he testified that on the day in question, he drove his moped to CRH to visit his mother. Because he recently underwent back surgery, he was still taking the prescription hydrocodone for pain. In fact, he took hydrocodone at home before leaving for the hospital. On his way to the hospital, he stopped at a liquor store and purchased a pint of vodka. Gatewood explained that he purchased vodka on his way to CRH because he does not "take hospitals very well." *Id.* at 156. He said that he had been airlifted three times to Methodist Hospital. However, Gatewood said that he did not drink the vodka until he arrived at the hospital parking lot. His plan, though, had been to wait until he got back home to drink. Because of the combination of hydrocodone and alcohol, Gatewood never made it up to visit his mother because he "wasn't in a real

good state of mind," which would have "upset her a lot." *Id.* at 159. Gatewood essentially agreed to the following timeline of events proposed by the prosecuting attorney:

> So you took [hydrocodone], got on your moped and started driving to the hospital, stopped at a liquor store, got your vodka, got to the hospital, started drinking, went inside, came back out, walked around and went back to your moped....

*Id.* at 164.

Officer Kapcynski testified at trial that it was his assumption when he arrived at CRH that Gatewood had been at his moped the entire time and never left it. Nevertheless, when confronted with the facts as they were presented at trial—that Gatewood actually went into the hospital and his whereabouts were unknown for nearly an hour—Officer Kapcynski admitted his assumption was wrong but nevertheless concluded that it was hard for him to believe that Gatewood "could have gotten to that level of intoxication in one hour. And so I would have had probable cause to believe that he had driven or ridden there intoxicated at some level." *Id.* at 135. Officer Kapcynski then testified that if a 150–pound male drank five beers in one hour, his BAC would be about 0.077. *Id.* at 149. Therefore, the deputy prosecutor extrapolated that it would take almost twenty beers in an hour for that same male to reach a BAC of 0.286. *Id.* When asked to translate the number of beers to vodka, whose alcohol concentration is "much higher tha[n] a beer," Officer Kapcynski was not able to do so. *Id.* at 144.

The jury acquitted Gatewood of Class D felony OWI with an ACE of 0.15 or more. The jury, however, found Gatewood guilty of Class C misdemeanor OWI, and after being presented with additional evidence, it found him guilty of the Class D felony

enhancement. Thereafter, the jury was presented with additional evidence, and it found him guilty of being a habitual substance offender. The trial court sentenced Gatewood to two years for Class D felony OWI with one year suspended to probation. The court imposed a consecutive three-year sentence for the habitual substance offender enhancement, which was suspended to community corrections. Gatewood now appeals his conviction, and the State cross-appeals the suspension of his habitual substance offender enhancement.

## Discussion and Decision

Gatewood contends that the evidence is insufficient to support his conviction for operating while intoxicated. When reviewing the sufficiency of the evidence, appellate courts must only consider the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind.2007). It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient. *Id.* To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it "most favorably to the trial court's ruling." *Id.* Appellate courts affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* at 146–47 (quotation omitted). It is therefore not necessary that the evidence "overcome every reasonable hypothesis of innocence." *Id.* at 147 (quotation omitted). "[T]he evidence is sufficient if an inference may reasonably be drawn from it to support the verdict." *Id.* (quotation omitted).

■ In order to convict Gatewood as charged here, the State had to prove that he operated a vehicle while intoxicated. Ind.Code § 9–30–5–2; Appellant's App. p. 2. Gatewood concedes that the evidence

presented at trial, including his own testimony, establishes that he operated a vehicle on May 23, 2007. Gatewood does not contest that he was intoxicated when the security officers and Officer Kapcynski found him around 9:00 p.m. that night. "Therefore, the only remaining question is whether or not Gatewood was intoxicated at the time he drove" earlier that night. Appellant's Br. p. 5.

■ According to Indiana law:

"Intoxicated" means under the influence of:

(1) alcohol;

(2) a controlled substance (as defined in IC 35–48–1);

(3) a drug other than alcohol or a controlled substance;

(4) a substance described in IC 35–46–6–2 or IC 35–46–6–3; or

(5) a combination of substances described in subdivisions (1) through (4);

*so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties.*

Ind.Code § 9–13–2–86 (emphasis added). Proof of intoxication does not require proof of blood alcohol content; it is sufficient to show that the defendant was impaired. *Ballinger v. State*, 717 N.E.2d 939, 943 (Ind.Ct.App.1999). Evidence of impairment may include: "(1) the consumption of significant amounts of alcohol; (2) impaired attention and reflexes; (3) watery or bloodshot eyes; (4) the odor of alcohol on the breath; (5) unsteady balance; (6) failure of field sobriety tests; [and] (7) slurred speech." *Id.* Therefore, the issue on appeal is whether the evidence is sufficient to prove that Gatewood had an impaired condition of thought and action and the loss of normal control of a person's faculties when Crehan and Branum observed him drive his moped into the CRH parking lot.

The evidence presented at trial reveals that around 8:00 p.m., security officers Crehan and Branum observed Gatewood drive his moped into the CRH south emergency room parking lot. Crehan, who was standing next to the security vehicle talking to Branum, saw Gatewood "stumble a little bit." Tr. p. 63. This, however, did not alarm Crehan because "a lot of times people do stumble when they come into the E.R. because they are sick or whatever." *Id.* In addition, Crehan did not think Gatewood was intoxicated and did not see any reason to call the police or any reason that Gatewood should not be driving at the time. *Id.* at 67. Branum, who was sitting inside the vehicle talking to Crehan, also observed Gatewood pull into the parking lot. Although Branum thought Gatewood had a tough time walking, he said it was "not unusual to see somebody walk in and go to the E.R. desk" with a medical condition. *Id.* at 80. Branum described Gatewood's walk into the emergency room as follows:

> Like I say when he pulled in he got off his moped and parked it facing 17th [S]treet and he kind of stumbled, he walked over to the entrance to the emergency room. There was at one point though he stopped and made eye contact with me and my partner, who was standing there talking and that's when he kind of grasped his back and kind of started walking a little humped over, like he had a back injury or something like that. So there was no need to question him. We don't stop everybody that comes into the hospital for medical treatment. *There wasn't any need to stop him for any reason.*

*Id.* at 85 (emphasis added).

In fact, the record reveals that on May 8, Gatewood underwent back surgery at CRH and was still taking hydrocodone for pain on May 23. In addition, Gatewood has metal in his feet and ankles and, as a result, has difficulty walking.

In any event, around 9:00 p.m., Branum found Gatewood lying on the ground a few feet away from his moped asleep. After being roused from sleep, Gatewood exhibited several signs of intoxication. Branum then summoned Officer Kapcynski, who likewise detected several signs of intoxication. Officer Kapcynski, who wrongfully assumed at the time that Gatewood had never left his moped after arriving at the hospital (and therefore did not know that Gatewood was unobserved for almost an hour), eventually ordered a medical blood draw, which revealed that Gatewood's BAC was 0.286. Although it is undisputed that Gatewood was heavily intoxicated around 9:00 p.m. and no bottle of vodka was found near him, Gatewood testified at trial that he did not drink the vodka until after arriving on hospital grounds and that he could not recall where he disposed of the bottle. *See id.* at 157 ("When I realized that I did something very stupid in drinking that much, I walked around the parking lot looking for either one of three people, my brother, sister or dad because [I] knew all three of them would be coming. I probabl[y] got rid of it somewhere along those lines."). In addition, the officers testified at trial that not all of the hospital trash cans were checked.

Nevertheless, the State argues on appeal that the evidence of Gatewood's intoxication at 9:00 p.m. "allowed the jury to reasonably infer that [he] was already intoxicated an hour earlier when he operated his moped." Appellee's Br. p. 8. In support, the State cites to Officer Kapcynski's testimony that an average male would have to drink twenty beers in an hour to reach the BAC that Gatewood had and that it would be difficult to reach that BAC so quickly. However, the evidence in this case is that Gatewood drank a pint of

vodka, not beer, and Officer Kapcynski was not able to provide any information regarding vodka.

Even if we assume that Gatewood drank some alcohol before arriving at the hospital, the State simply presented no evidence that when Gatewood operated his moped around 8:00 p.m., he had an impaired condition of thought and action and the loss of normal control of a person's faculties. That is, this is not a case where Gatewood was involved in an accident, his driving exhibited signs of impairment, or he committed any traffic infractions. In short, the State failed to prove that Gatewood was intoxicated at the crucial time. Though Gatewood, who recently underwent back surgery and had several medical conditions that affected his walking, stumbled after getting off the moped, his driving did not alarm either Crehan or Branum, who were both outside the hospital when Gatewood pulled up and are trained to deal with intoxicated people, to the point that they took action. As Branum plainly said, "There wasn't any need to stop him for any reason." *Id.* at 85. And Officer Kapcynski did not observe Gatewood drive. Moreover, intoxication at the time Gatewood drove cannot reasonably be inferred because Gatewood was unobserved for nearly an hour. In this case, we are not presented with conflicting evidence on the issue of Gatewood's intoxication at the time he drove; rather, we are presented with no evidence. We therefore reverse Gatewood's conviction for OWI and his enhancement for being a habitual substance offender. As such, we do not address the State's cross-appeal.

Reversed.

RILEY, J., and CRONE, J., concur.