## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 23 2019, 10:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Marcelino Lopez
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan M. Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Dylan M.A. Jacob,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

April 23, 2019

Court of Appeals Case No.
18A-CR-1700

Appeal from the Marion Superior Court

The Honorable Clayton A. Graham, Judge

Trial Court Cause No.
49G07-1803-CM-8796

**Mathias, Judge.**

[1]     Dylan Jacob ("Jacob") appeals his conviction of Operating a Vehicle While Intoxicated from the Marion Superior Court. He argues one issue, which we

restate as whether the State presented sufficient evidence to support the conviction.

[2] We affirm.

## Facts and Procedural History

[3] On March 8, 2018, Jacob attended a concert in Bloomington, Indiana. Jacob testified he had four shots of tequila at the concert. After the concert, Jacob took an Uber to his sister's house in Greenwood, slept for approximately an hour at her residence, and then decided to drive home. While travelling northbound on Interstate 465, his vehicle was struck from behind by a semi.

[4] Indiana State Trooper Jayson Massey was dispatched to the scene on March 9, 2018 at 1:33 a.m. and arrived at approximately 1:50 a.m. He observed a semi in the left lane and a Tesla passenger car in the right lane. Trooper Massey also observed significant rear-end passenger's side damage to the Tesla. When Trooper Massey made contact with Jacob, the registered owner and driver of the Tesla, he observed that Jacob "had a hard time comprehending . . . the instructions that I gave him" and "seemed very out of it." Tr. p. 9. Specifically, when Trooper Massey asked Jacob for his driver's license, proof of insurance, and registration, Jacob seemed confused and unsure of what to do whereas the driver of the semi did not exhibit the same confusion.

[5] Trooper Massey asked Jacob if he had been drinking. Jacob replied that he had not.[1] However, Trooper Massey was able to smell alcohol on Jacob's breath from approximately two to three feet away. Trooper Massey a performed the Horizontal Gaze Nystagmus ("HGN") field sobriety test on Jacob. During this test, Trooper Massey checked for equal pupil size, resting nystagmus, equal tracking, lack of smooth pursuit, "nystagmus prior to forty-five degrees" and "vertical nystagmus." Tr. p. 12. Jacob displayed all six clues on this sobriety test. Trooper Massey also observed Jacob's eyes to be bloodshot, "glassy," and "shiny" when exposed to light. Tr. p. 11. Trooper Massey acknowledged on cross examination that a concussion could have skewed the results of the HGN test. Trooper Massey did not administer any further field sobriety tests at the time because traffic on I-465 was hindered due to the accident. Traffic was flowing through the center lane, and Trooper Massey believed further accidents could occur because the vehicles that had been involved in the accident were still on the road.

[6] At this time, Trooper Massey read Jacob the implied consent and gave him a *Miranda* warning. Jacob consented to a blood draw.[2] He also admitted that he had Wendy's for dinner, four shots of tequila at the concert in Bloomington, and took an Uber to his sister's house in Greenwood, where he slept for about

---

[1] Jacob disputes that he initially told Trooper Massey that he had not been drinking.

[2] The blood draw results were not considered by the trial court because the State was unable to establish that the blood draw was taken within three hours of the operation of the vehicle as required by Indiana Code sections 9-30-6-2(c), 15. *Mordacq v. State*, 585 N.E.2d 22, 27 (Ind. Ct. App. 1992).

an hour, and then felt fine to drive home. Jacob admitted that he was driving and had the vehicle on auto-pilot when he was struck from behind by the semi. Although Trooper Massey did not detect any signs of intoxication on the part of semi driver, the cause of the accident was determined to be primarily the fault of the semi driver. Jacob testified that he suffered from a concussion as a result of the accident and that officers from the Indianapolis Metropolitan Police Department ("IMPD") initially arrived at the scene, but he was told that he had to wait for someone from the Indiana State Police ("ISP") in order to file an official report.

[7] Jacob was charged with Count I, operating a motor vehicle while intoxicated endangering a person as a Class A misdemeanor, and Count II, operating a motor vehicle while intoxicated with an alcohol concentration equivalent ("ACE") of 0.08 or more as a Class C misdemeanor. A bench trial was held on July 17, 2018. At the bench trial, the trial court dismissed both counts, but allowed the State to pursue Count I as a lesser included offense of a Class C misdemeanor. Jacob was found guilty of this count and was sentenced to sixty days in jail, less time served, all of which was suspended to probation. Jacob now appeals.

## Discussion and Decision

[8] Initially, we must note that Jacob argues that the trial court "erred in its application of Indiana Code 9-30-5-2(a)" and that the trial court's determinations are questions of law under a de novo standard of appellate review. Appellant's Br. at 8. Jacob then proceeds to argue that the evidence

does not support the convictions. The State argues that this standard of review is not applicable to the issues in this case and that this Court should evaluate this matter pursuant to a sufficiency of evidence review. Here, we are not evaluating a question composed entirely of law. We are evaluating a question regarding application of the facts to the law and agree with the State that the sufficiency of evidence standard is the appropriate standard in this matter.

[9] Upon a challenge to a conviction based on the sufficiency of evidence to support a conviction, a reviewing court does not reweigh the evidence or judge the credibility of the witnesses. *Alkhalidi v. State*, 753 N.E.2d 625, 627 (Ind. 2001). Appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. *Bald v. State*, 766 N.E.2d 1170, 1173 (Ind. 2002). We "must affirm 'if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt.'" *McHenry v State*, 820 N.E.2d 124, 126 (Ind. 2005) (citing *Tobar v. State*, 740 N.E.2d 109, 111–12 (Ind. 2000)). A conviction may be based upon circumstantial evidence alone. *Perez v. State*, 872 N.E.2d 208, 213 (Ind. Ct. App. 2007), *trans. denied*. Reversal is appropriate only when reasonable persons would not be able to form inferences as to each material element of the offense. *Id.*

[10] "Intoxicated" is defined by Indiana Code section 9-13-2-86, in relevant part, as:

under the influence of:

(1) alcohol

so that there is an impaired condition of thought and action and the loss of control of a person's faculties.

[11] Proof of intoxication does not require proof of blood alcohol content; it is sufficient to show that the defendant was impaired. *Ballinger v. State*, 717 N.E.2d 939, 943 (Ind. Ct. App. 1999). "The State need not present separate proof of impairment of action, impairment of thought, and loss of control of faculties to establish an individual's intoxication." *Woodson v. State*, 966 N.E.2d 135, 142 (Ind. Ct. App. 2010), *trans. denied*. An individual's impairment is determined by considering his capability as a whole, not component by component, such that impairment of any of these three abilities equals impairment. *Id*. Impairment can be established by the following: "(1) the consumption of significant amounts of alcohol; (2) impaired attention and reflexes; (3) watery or bloodshot eyes; (4) the odor of alcohol on the breath; (5) unsteady balance; (6) failure of field sobriety tests; (7) slurred speech." *Fields v. State*, 888 N.E.2d 304, 307 (Ind. Ct. App. 2008) (quoting *Ballinger*, 717 N.E.2d at 943).

[12] Jacob primarily argues that the State was unable to prove that he was intoxicated while operating a motor vehicle. Jacob also argues that his case is analogous to the facts in *Gatewood v. State*, 921 N.E.2d 45 (Ind. Ct. App. 2010), *trans. denied*. In *Gatewood*, a panel of our court determined that the evidence was insufficient to show that a moped driver was intoxicated at the time he was

operating the moped, when the driver was found asleep in a hospital parking lot next to the moped with a blood alcohol content of 0.286. *Id.* Although Gatewood had been observed by a security guard stumbling when he first arrived at the hospital, he had recently undergone surgery, had metal in his feet and ankles which made walking difficult, and was taking hydrocodone for pain. *Id.* at 47. The security guards, who were trained in dealing with intoxicated individuals, were not alarmed by Gatewood's driving when he arrived at the hospital. *Id.* at 50. In *Gatewood*, the driver also testified that he had bought vodka on the way to the hospital and that he drank the vodka in the parking lot after arriving because he did not "'take hospitals very well.'" *Id.* at 47.

[13] Here, even without the precise timing of the accident established in the record, the trial court could reasonably infer that Jacob had driven while intoxicated shortly before Trooper Massey was dispatched.[3] When Trooper Massey arrived on the scene approximately twenty minutes after being dispatched at 1:33 a.m., the vehicles involved in the accident were still in the lanes of I-465; they had not been pulled off to the shoulder, nor had they been towed. Trooper Massey

---

[3] Jacob also challenges his conviction based on *Rich v State*, 864 N.E.2d 1130 (Ind. Ct. App. 2007), because officers from IMPD initially arrived on the scene and told him that he had to wait until an officer from ISP arrived in order to file a police report. He seems to argue that these IMPD officers should have given him a *Miranda* warning but simultaneously questions whether these officers had reasonable suspicion to believe a crime had occurred and whether this was an improper stop. Here, when Trooper Massey arrived and determined that he had probable cause to believe a crime had occurred, he read Jacob a *Miranda* warning and Jacob provided a statement. The State did not rely on any evidence from the IMPD officers who initially arrived at the scene. There is no indication that this was anything more than a routine accident investigation or that Jacob had been "stopped." The State relied on the evidence from ISP Trooper Massey and Jacob's arguments under *Rich* are unavailing.

observed that Jacob had difficulty following his directions to provide his license, registration, and proof of insurance; Jacob's eyes appeared glassy and bloodshot; Trooper Massey was able to detect the smell of alcohol on Jacob's breath; and Jacob signaled as intoxicated for all six clues on the Horizontal Gaze Nystagmus test. After being read his *Miranda* rights, he admitted to drinking four shots of tequila at a concert in Bloomington, taking an Uber to his sister's house in Greenwood, sleeping for approximately an hour, and then making the decision to drive home.

Jacob requests this court to attribute the behaviors and other observations by Trooper Massey that commonly indicate intoxication to the head injury Jacob sustained when his Tesla was struck by a semi. However, we will not weigh evidence or judge credibility; that is properly the province of the fact-finder at trial, here the judge in a bench trial. *Alkhalidi*, 753 N.E.2d at 627. As such, we conclude there was sufficient evidence in the record to support the conviction of Operating a Vehicle While Intoxicated as a Class C Misdemeanor.

# Conclusion

The State of Indiana was able to show sufficient evidence to prove that Jacob committed the offense of Operating a Vehicle While Intoxicated, and any inferences made by the trial court were not unreasonable.

Affirmed.

Vaidik, C.J., and Crone, J., concur.