# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**PATRICIA CARESS McMATH**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

MICHAEL WOODSON,                                )
                                               )
    Appellant-Defendant,              )
                                               )
        vs.                     )    No. 49A05-1106-CR-306
                                               )
STATE OF INDIANA,                              )
                                               )
    Appellee-Plaintiff.               )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable James B. Osborn, Judge
The Honorable Patrick Murphy, Commissioner
Cause No. 49F15-1102-FD-009919

**January 6, 2012**

**OPINION - FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

Michael Woodson ("Woodson") was convicted of two counts of Fraud, each as a Class D felony.[1] He now appeals.

We reverse.

## Issue

Woodson raises two issues for our review. We find one dispositive: whether the trial court abused its discretion when it admitted into evidence DVDs seized from Woodson because the seizure was unlawful under the United States and Indiana constitutions.

## Facts and Procedural History

On February 13, 2011, Officer Christopher Cooper ("Officer Cooper") was on patrol in Indianapolis, and had parked his car in a parking lot across the street from a gas station and fast-food restaurant on 38th Street in an area of Indianapolis known as a "hot zone" for drug activity.[2] (Tr. 9.) Officer Cooper's attention was drawn to a maroon car in the parking lot of the gas station. The car was occupied by two individuals, and a bicycle was parked immediately next to the vehicle.

One of the individuals, later identified as Woodson, got out of the car, put on a backpack, and began to ride the bicycle in the gas station's parking lot. (Tr. 12.) The car drove away and was followed by another police officer. Officer Cooper drove his car into

---

[1] Ind. Code § 35-43-5-4(10).

[2] Officer Cooper's testimony indicates that he worked the "one-thirty to ten" shift and that the events in question occurred around "7:30 or 8:00" (Tr. 7), but it is unclear from the testimony whether either Officer Cooper's shift or the incident occurred in the morning or evening.

the gas station parking lot and pulled up next to Woodson, who had gotten off the bicycle just as Officer Cooper began to approach him.

Officer Cooper asked Woodson what he was doing, to which Woodson responded that he was going home. Woodson was "loud" and "belligerent" (Tr. 11), so Officer Cooper handcuffed him for officer safety reasons. After confirming Woodson's identity, Officer Cooper asked Woodson whether he could search the backpack. Woodson consented to the search and Officer Cooper found thirty-four DVDs, each in a white sleeve, with various movie titles handwritten on them. Among the titles were "Green Hornet" and "Sanctum." Knowing that these movies were still in movie theaters and were not available in DVD release, Officer Cooper arrested Woodson. Later examination of the DVDs confirmed that they contained the titled movies and were not manufactured by the originating movie studios.

On February 15, 2011, Woodson was charged with two counts of Fraud. On March 30, 2011, Woodson filed a motion to suppress evidence, contending that the DVDs Officer Cooper obtained were products of an illegal search and seizure.

On April 21, 2011, the trial court conducted a hearing on the motion to suppress and a bench trial. The trial court denied the motion to suppress and after a bench trial found Woodson guilty on both counts. On May 31, 2011, the trial court sentenced Woodson to two years imprisonment, with 514 days suspended and 216 executed.

This appeal followed.

**Discussion and Decision**

Woodson argues that the trial court erred when it did not suppress and subsequently

admitted into evidence the DVDs Officer Cooper obtained because they were the fruit of an improper search and seizure.

"Our standard of review of rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by trial objection." Boston v. State, 947 N.E.2d 436, 444 (Ind. Ct. App. 2011). We determine whether there is substantial evidence of probative value to support the trial court's ruling. Litchfield v. State, 824 N.E.2d 356, 359 (Ind. 2005). We do not reweigh evidence and construe conflicting evidence most favorably to the trial court's ruling. Widduck v. State, 861 N.E.2d 1267, 1270 (Ind. Ct. App. 2007). We must also consider uncontested evidence favorable to the defendant. Id. The trial court's ultimate determination of the constitutionality of a search or seizure is, however, reviewed de novo. Harper v. State, 922 N.E.2d 75, 79 (Ind. Ct. App. 2010) (quoting Crabtree v. State, 762 N.E.2d 241, 244 (Ind. Ct. App. 2002)) (applying this standard to a Terry stop), trans. denied.

Woodson contends that Officer Cooper's actions constitute a Terry stop, that is, a brief detention for investigative purposes, and that under the totality of the circumstances Officer Cooper lacked the reasonable suspicion required under the United States and Indiana Constitutions to conduct the stop. The State responds that the initial interaction between Woodson and Officer Cooper was a consensual encounter that did not implicate Woodson's Fourth Amendment interests, but that Officer Cooper nonetheless had the reasonable suspicion required for a Terry stop.

The United States Constitution affords individuals protection from "unreasonable

4

searches and seizures." U.S. Const. amend. IV. The Indiana Constitution extends similar protections. Ind. Const. Art. 1, § 11. The Fourth Amendment's protections "extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." United States v. Arvizu, 534 U.S. 266, 273 (2002) (citing Terry v. Ohio, 392 U.S. 1, 9 (1968), and United States v. Cortez, 449 U.S. 411, 417 (1981)). Because the balance between public interest and an individual's right to personal security tilts in favor of a lower standard than probable cause, reasonable suspicion that criminal activity "may be afoot" is sufficient to justify such investigatory stops. Id.

Reasonable suspicion requires that there be "some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." Cortez, 449 U.S. at 417. While there is no set of hard-and-fast rules to determine what constitutes reasonable suspicion, Arvizu, 534 U.S. at 274, a mere "hunch" is insufficient. Terry, 392 U.S. at 27. When reviewing investigatory stops for reasonable suspicion, we "look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." Arvizu, 534 U.S. at 273 (citing Cortez, 449 U.S. at 417-418).

A consensual encounter that does not implicate the Fourth Amendment occurs when an officer approaches an individual to make a casual and brief inquiry and the individual remains free to leave. State v. Calmes, 894 N.E.2d 199, 202 (Ind. Ct. App. 2008). The test for whether a reasonable impression existed that the individual was free to leave is "what a reasonable person, innocent of any crime, would have thought had he been in the citizen's

shoes." Crabtree, 762 N.E.2d at 245. Several factors may be considered in determining whether a reasonable person would not believe he was free to leave, including the presence of multiple officers, the display of a weapon, any physical touching of the person, or the use of a tone of voice by the officer indicating that compliance might be compelled. Calmes, 894 N.E.2d at 202.

Here, we cannot conclude that Officer Cooper's interaction with Woodson began as a consensual encounter. Woodson had been riding his bicycle in the parking lot of the gas station and was able to see the maroon car that he had just exited being pulled over by Officer Cooper's colleague. Officer Cooper approached as Woodson got off the bicycle, pulled his car up immediately next to Woodson, and asked Woodson what he was doing. Officer Cooper testified that he would have pursued Woodson if Woodson fled instead of complying with the request for information. Officer Cooper handcuffed Woodson for officer safety purposes when Woodson became "loud" and "belligerent" in the absence of any apparent threat to Officer Cooper and before obtaining information about Woodson from his police computer. Under these circumstances, we cannot conclude that this was a consensual encounter.

We thus consider whether Officer Cooper's stop of Woodson was a proper Terry stop. Woodson argues that Officer Cooper lacked the reasonable suspicion necessary to conduct a Terry stop. We agree.

Woodson was one of two individuals in a car parked at a gas station in a "hot zone" of drug activity, with a bicycle parked immediately next to the car. Officer Cooper testified that

6

he could not see what interaction, if any, was occurring within the car. Woodson got out of the car carrying a backpack, got on his bicycle, and began to ride it. The State characterizes this as Woodson riding "around in circles" (Appellee's Br. 9), but on cross examination Officer Cooper agreed that Woodson was "kind of idly riding his bike" along 38th Street in front of a fast food restaurant attached to the gas station. (Tr. 12-13). At some point before Officer Cooper approached him, Woodson got off the bicycle, even as he was able to see another police officer pull over the maroon car he had just been sitting in.

Officer Cooper testified here that he could not see any transaction between Woodson and the driver of the maroon car and there had been no report of criminal activity to which Officer Cooper was responding. Woodson did not attempt to flee the scene and hide or dump contraband upon completing a transaction and seeing a police officer approach in a high-crime area. See Ross v. State, 844 N.E.2d 537, 541-42 (Ind. Ct. App. 2006). Nor did Officer Cooper testify that in his training and experience Woodson's behavior was of a type frequently displayed by individuals dealing in pirated DVDs, drugs, or any other contraband. See Wilson v. State, 670 N.E.2d 27, 28-29 (Ind. Ct. App. 1996) (concluding there was reasonable suspicion to detain defendant where the arresting officer was in a high-crime and -drug area, was trained in the factors pointing to drug transactions, and observed conduct conforming to this pattern).

Only the fact that the area of Indianapolis in which Woodson was arrested was considered to be a "hot zone" gave Officer Cooper any kind of suspicion that drug-related or other illegal activity might be afoot. Cf. Crabtree, 762 N.E.2d at 246-47 (concluding there

7

was reasonable suspicion where the defendant was in a high-crime area, it was 4:30 a.m., a noise complaint had been conveyed to police, and the defendant was found hiding behind a car when police arrived on scene).  This is not enough to amount to reasonable suspicion, and we therefore cannot conclude under the totality of the circumstances that Officer Cooper's Terry stop was appropriate under the Fourth Amendment.

Because Officer Cooper's stop of Woodson was neither a consensual encounter nor supported by reasonable suspicion, the evidence obtained as a result of that stop—the DVDs in Woodson's backpack—should have been excluded from evidence.  The admission into evidence of those DVDs was clearly prejudicial because the discs formed the basis for subsequent testimony at trial as to the number and nature of the materials, without which the State would have lacked sufficient evidence to obtain a conviction.  We therefore reverse Woodson's conviction.

Reversed.

BAKER, J., and DARDEN, J., concur.