# FOR PUBLICATION



FILED
Mar 29 2012, 9:28 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ANN M. SUTTON**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

MICHAEL WOODSON,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　 )
　　　　Appellant-Defendant,　　　　　 )
　　　　　　　　　　　　　　　　　　 )
　　　　vs.　　　　　　　　　　　　　 )　　　No. 49A02-1106-CR-543
　　　　　　　　　　　　　　　　　　 )
STATE OF INDIANA,　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　 )
　　　　Appellee-Plaintiff.　　　　　　 )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable James B. Osborn, Judge
The Honorable Patrick Murphy, Commissioner
Cause No. 49F15-1102-CM-007863

**March 29, 2012**

**OPINION – FOR PUBLICATION**

**MATHIAS, Judge**

Michael Woodson ("Woodson") was convicted in Marion Superior Court of Class B misdemeanor public intoxication. Woodson appeals and argues: (1) that the trial court erred in admitting evidence obtained as result of his encounter with the police, and (2) that the State presented insufficient evidence to support his conviction.

We affirm.

**Facts and Procedural History**

In the early morning hours of February 5, 2011, Indianapolis Metropolitan Police Department Officer Christopher Chapman ("Officer Chapman") was dispatched to investigate a report of a man and a woman fighting in the street at the intersection of two streets in Indianapolis. When Officer Chapman arrived at the intersection, he was flagged down by a pedestrian who directed him down the street. Officer Chapman drove approximately one block down the street and saw a man, later identified as Woodson, and a woman on the sidewalk. Officer Chapman exited his car and approached the couple. Four other officers also arrived on the scene at approximately the same time.[1] Although Woodson and his companion were not fighting, Chapman did smell the odor of alcohol on Woodson. The woman showed no sign of injuries and left after speaking to Officer Chapman. Woodson, however, was "abrasive" and, in addition to smelling of alcohol, his speech was slurred. Woodson admitted that he had consumed a pint of hard liquor and a thirty-two ounce beer. Woodson also kept his hands in his pockets. Officer Chapman asked Woodson to remove his hands from his pockets for reasons of officer safety. But despite being asked four times to remove his hands from his pockets,

---

[1] Only Officer Chapman testified at Woodson's trial.

Woodson refused.  At this point, Woodson was placed in handcuffs and arrested for public intoxication.

Later that day, the State charged Woodson with Class B misdemeanor public intoxication.  On March 30, 2011, Woodson filed a motion to suppress, arguing that there was no reasonable suspicion to detain him and that all evidence resulting from his interaction with the police should be suppressed.  The motion to suppress was argued at Woodson's bench trial, which was held on April 21, 2011.  The trial court denied the motion to suppress and allowed the State to present the testimony of Officer Chapman.  Woodson testified on his own behalf and denied being drunk.  He testified instead that he had not been drinking that night and claimed that he was simply advising the woman he was with that it was dangerous to be on the street.  The trial court found Woodson guilty as charged and sentenced him to a one-day suspended sentence.  Woodson now appeals.

## I.  Admission of Evidence

Woodson first challenges the trial court's ruling on the admission of evidence.  We recently explained that:

> [o]ur standard of review of rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by trial objection.  We determine whether there is substantial evidence of probative value to support the trial court's ruling.  We do not reweigh evidence and construe conflicting evidence most favorably to the trial court's ruling.  We must also consider uncontested evidence favorable to the defendant.  The trial court's ultimate determination of the constitutionality of a search or seizure is, however, reviewed *de novo*.

Woodson v. State, 960 N.E.2d 224, 226 (Ind. Ct. App. 2012) (citations and internal quotations omitted).

3

Woodson claims that the trial court should have suppressed any evidence obtained from his encounter with the police because there was no reasonable suspicion justifying a police stop. Both the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution afford individuals protection from unreasonable searches and seizures. Woodson, 960 N.E.2d at 227. These protections extend to brief investigatory stops of persons that fall short of traditional arrest. Armfield v. State, 918 N.E.2d 316, 319 (Ind. 2009); Terry v. Ohio, 392 U.S. 1, 9 (1968). "Under Terry, an officer is permitted to stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause." Armfield, 918 N.E.2d at 319 (internal quotations omitted).

Reasonable suspicion requires that there be "some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." Woodson, 960 N.E.2d at 227 (quoting United States v. Cortez, 449 U.S. 411, 417 (1981)). Although there is no set of hard-and-fast rules to determine what constitutes reasonable suspicion, a mere "hunch" is insufficient. Id. On appeal, we make reasonable-suspicion determinations by looking at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing. Id.; Armfield, 918 N.E.2d at 319.

Here, Woodson claims that the police had no reasonable suspicion to initiate a Terry stop to investigate him as he stood on the sidewalk. Woodson notes that the only information that the police had at that time came from an unknown caller. And Woodson

4

is correct that, as a general rule, "an anonymous tip alone is not likely to constitute the reasonable suspicion necessary for a valid Terry stop." Sellmer v. State, 842 N.E.2d 358, 361 (Ind. 2006) (citing Lampkins v. State, 682 N.E.2d 1268, 1271 (Ind. 1997); Alabama v. White, 496 U.S. 325, 329-30 (1990)).

However, not all encounters between citizens and the police constitute a seizure requiring justification. As we explained in Powell v. State:

> There are three levels of police investigation, two of which implicate the Fourth Amendment and one of which does not. First, the Fourth Amendment requires that an arrest or detention that lasts for more than a short period of time must be justified by probable cause. Second, pursuant to Fourth Amendment jurisprudence, the police may, without a warrant or probable cause, briefly detain an individual for investigatory purposes if, based upon specific and articulable facts, the officer has a reasonable suspicion that criminal activity has or is about to occur. The third level of investigation occurs when a police officer makes a casual and brief inquiry of a citizen, which involves neither an arrest nor a stop. This is a consensual encounter in which the Fourth Amendment is not implicated.

912 N.E.2d 853, 859 (Ind. Ct. App. 2009) (citing State v. Calmes, 894 N.E.2d 199, 202 (Ind. Ct. App. 2008)).

A person is "seized" only when, by means of physical force or a show of authority, his or her freedom of movement is restrained. Id. What constitutes a restraint on liberty prompting a person to conclude that he is not free to leave will vary depending upon the particular police conduct at issue and the setting in which the conduct occurs. Id. "'Examples of circumstances that might indicate a seizure where the person did not actually attempt to leave the scene would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's

5

request might be compelled.'" Id. (citing United States v. Mendenhall, 446 U.S. 544, 553 (1980)). Where such evidence is lacking, otherwise inoffensive contact between a member of the public and the police does not amount to a seizure of that person. Id. The test for existence of a "show of authority" is an objective one in that the question is not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person. Id. (citing California v. Hodari D., 499 U.S. 621, 628 (1991)).

We agree with the State that there was no requirement for reasonable suspicion for the police to approach Woodson and his companion because, at least initially, the encounter was simply "a casual and brief inquiry of a citizen, which involves neither an arrest nor a stop." See Powell, 912 N.E.2d at 859. The police had been dispatched to the area on a report of a man and a woman fighting in the street. When the police arrived, they were directed by a bystander to the area where Woodson and his female companion were found. The police approached Woodson and his companion while the two were on the sidewalk. We find nothing improper about this behavior on the part of the officers. In fact, we think it would be absurd to suggest that the police could not approach Woodson under these circumstances. Although there were several officers on the scene, there is no indication that their presence was threatening. Indeed, Officer Chapman testified that he and his fellow officers did not have their weapons drawn and that the lights on their patrol cars were not activated. Nor is there any indication that Officer Chapman, or any of the other officers, touched Woodson or instructed him to stop.

Based on the totality of the circumstances, we conclude that Woodson's encounter

6

with the police did not rise to the level of a <u>Terry</u> stop for which reasonable suspicion is required. Instead, it was a consensual encounter that was not a seizure within the meaning of the Fourth Amendment. <u>See</u> <u>State v. Augustine</u>, 851 N.E.2d 1022, 1025 (Ind. Ct. App. 2006) (holding that defendant sitting in driver's seat of his car in his driveway with the engine running was not seized when the officer approached him to investigate report of erratic driving because there were no other officers present, no evidence that the officer displayed a weapon or touched the defendant, and no indication that the officer used any language or spoke in a tone of voice mandating compliance); <u>State v. Lefevers</u>, 844 N.E.2d 508, 513 (Ind. Ct. App. 2006) (holding that defendant was not seized when she parked her car near police officer's car and officer, without activating his lights, got out of his vehicle and began talking to the defendant), <u>trans. denied</u>; <u>Overstreet v. State</u>, 724 N.E.2d 661, 663 (Ind. Ct. App. 2000) (holding that defendant was not stopped or seized where officer pulled his patrol car behind defendant's car at fuel pump without activating his lights, approached him, asked for identification, and questioned him about suspicious activity), <u>trans. denied</u>; <u>see</u> <u>also</u> <u>Michigan v. Chesternut</u>, 486 U.S. 567, 574-75 (1988) (holding that defendant was not seized by police where the record did not reflect that the police had activated a siren or flashers, commanded the defendant to halt, or displayed any weapons and concluding that even though officer's behavior of driving his patrol car parallel to a running pedestrian "could be somewhat intimidating," such "police presence does not, standing alone, constitute a seizure.").[2]

---

[2] Woodson argues that the police violated both the federal and Indiana constitutions. But he makes no separate argument regarding Article 1, Section 11 of the Indiana Constitution. We therefore consider

7

Woodson, however, claims that Officer Chapman testified that Woodson was "not free to leave" when the officers first arrived. This is not entirely accurate. During cross-examination of Officer Chapman, Woodson's trial counsel asked the following leading question: "So at that point, Mr. Woodson [was] not free to leave. Is that correct?" Tr. p. 68. Officer Chapman responded, "Um . . . I would say no. I mean – I'm just dispatched, you know. . . ." Id. (ellipses in original). Officer Chapman's response is, at best, ambiguous. His response of "I would say no," could mean, as Woodson takes it, that Officer Chapman believed that Woodson was not free to leave. However, it could also be a negative response to counsel's actual question of "Is that correct?" That is, Officer Chapman could have meant that Woodson's counsel was *not* correct in saying that Woodson was not free to leave. In light of this ambiguity, we cannot say that Officer Chapman testified that Woodson was not free to leave. Moreover, Officer Chapman's subjective belief as to whether Woodson was free to go is not dispositive. The test for the existence of a "show of authority" is an objective one based on upon what the officer's words and actions would convey to a reasonable person. Powell, 912 N.E.2d at 859.

Once the officer smelled the odor of alcohol on the defendant and noticed that his speech was impaired, however, the initially-consensual encounter evolved into a Terry

only his argument under the Fourth Amendment of the federal Constitution. See Abel v. State, 773 N.E.2d 276, 278 n.1 (Ind. 2002) (holding that state constitutional claim was waived where defendant presented no independent analysis supporting a separate standard under the state constitution). And even if we considered the conduct of the officers here under Article 1, Section 11 of the Indiana Constitution, Woodson would not prevail. The propriety of a search and seizure under the Indiana Constitution "turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances." Litchfield v. State, 824 N.E.2d 356, 359 (Ind. 2005). We find nothing about the conduct of the officers in the present case to be unreasonable. Instead, it would be unreasonable for the officers, responding to a call of a man and a woman fighting in the street, not to approach Woodson after going to the area of the reported fight and finding Woodson and his female companion on a nearby sidewalk.

8

stop. This is precisely what happened in Augustine, where an initially consensual encounter became a Terry stop once the officer noticed that the defendant smelled of alcohol, was unable to speak clearly, and admitted to drinking and driving. Augustine, 851 N.E.2d at 1025. We concluded that the Terry stop was justified by reasonable suspicion based on the call from the concerned citizen and the observations made by the officer, i.e. the defendant sitting in his car with the engine running, smelling of alcohol, and having difficulty speaking. Id. at 1026.

Similarly, here we conclude that, once Officer Chapman smelled the odor of alcohol on Woodson and noticed that Woodson's speech was slurred, he had a reasonable suspicion based on articulable facts that Woodson was publicly intoxicated. This suspicion was confirmed when Woodson admitted to having consumed, by anyone's standards, a large quantity of alcohol—a pint of hard liquor and a thirty-two ounce beer. This, combined with Woodson's refusal to remove his hands from his pockets despite repeated requests to do so justified the officers' actions of placing Woodson in handcuffs and charging him with public intoxication. Simply put, the trial court did not err in admitting evidence obtained as a result of Woodson's encounter with the police.

## II. Sufficiency of the Evidence

Woodson also claims that the State presented insufficient evidence to support his conviction for public intoxication. Upon a challenge to the sufficiency of evidence to support a conviction, we neither reweigh the evidence nor judge the credibility of the witnesses; instead, we respect the exclusive province of the trier of fact to weigh any conflicting evidence. McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005). We consider

9

only the probative evidence and reasonable inferences supporting the verdict, and we will affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. Id.

Pursuant to Indiana Code section 7.1-5-1-3 (2005), "[i]t is a Class B misdemeanor for a person to be in a public place or a place of public resort in a state of intoxication caused by the person's use of alcohol[.]" Woodson does not deny that he was in a public place; instead, he claims that the State did not prove that he was intoxicated. We disagree.

Indiana Code section 9-13-2-86 (2004) defines "intoxicated" as "under the influence of alcohol . . . so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties." See Fought v. State, 898 N.E.2d 447, 451 (Ind. Ct. App. 2008) (citing Indiana Code section 9-13-2-86 in discussion of sufficiency of evidence supporting public intoxication conviction). The State need not present separate proof of impairment of action, impairment of thought, and loss of control of faculties to establish an individual's intoxication. Curtis v. State, 937 N.E.2d 868, 873 (Ind. Ct. App. 2010). Rather, a person's impairment is to be determined by considering his capability as a whole, not component by component, such that impairment of any of these three abilities equals impairment. Id. And such impairment can be established by evidence of: (1) the consumption of significant amount of alcohol; (2) impaired attention and reflexes; (3) watery or bloodshot eyes; (4) the odor of alcohol on the breath; (5) unsteady balance; (6) failure of field sobriety tests; and (7) slurred speech. Fought, 898 N.E.2d at 451.

10

Woodson complains that there was no evidence that he had any difficulty standing or walking and that, without such, the evidence is insufficient to show that he was impaired in action. This is little more than a request to reweigh the evidence, which we will not do. The evidence favoring the conviction reveals that Officer Chapman could smell the odor of alcohol on Woodson and that Woodson's speech was slurred. Woodson also had an "abrasive" attitude toward the police. More importantly, Woodson admitted to drinking an entire pint of hard liquor and a thirty-two ounce beer. Thus, three of the seven above-mentioned factors indicating intoxication were present. The trial court judge, acting as the trier of fact, could readily conclude from this evidence that Woodson was under the influence of alcohol such that there was an impaired condition of thought and action and the loss of normal control of Woodson's faculties.

Furthermore, Officer Chapman testified that, based upon his training and experience, it was his opinion that Woodson was "intoxicated." Tr. p. 19. This itself is sufficient to support Woodson's conviction. See Wright v. State, 772 N.E.2d 449, 460 (Ind. Ct. App. 2002) ("With respect to the sufficiency of the evidence upon the element of intoxication, it is established that a non-expert witness may offer an opinion upon intoxication, and a conviction may be sustained upon the sole testimony of the arresting officer."). In short, the evidence was sufficient to support Woodson's conviction for Class B misdemeanor public intoxication.

Affirmed.

FRIEDLANDER, J., and RILEY, J., concur.