**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Oct 10 2013, 5:27 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**PATRICIA CARESS McMATH**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JASON HAYS, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 28A04-1303-CR-109 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE GREENE CIRCUIT COURT
The Honorable Erik C. Allen, Judge
Cause No. 28C01-1204-FB-10

**October 10, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Jason Hays appeals his conviction for class B felony operating a vehicle with a controlled substance in blood causing death. The sole restated issue presented for our review is whether fundamental error occurred when the trial court admitted evidence that methamphetamine was found in Hays's blood. Concluding that the claimed error does not rise to the level of fundamental error, we decline to review Hays's challenge to the admissibility of the blood evidence and affirm his conviction.

**Facts and Procedural History**

At approximately 10:09 a.m. on February 15, 2012, Hays was traveling on State Road 445 in Bloomfield when his vehicle collided head-on with a car driven by Savanah Allen. Accident reconstruction revealed that Hays was driving eastbound in his mother's 2008 Jeep Grand Cherokee Laredo when he crossed into the oncoming traffic lane and struck Allen's 1998 Chevrolet Lumina. Allen died as a result of the crash.

Jennifer Johnson was also driving on State Road 445 that morning when she came upon the scene of the accident shortly after it happened. Hays's badly damaged Jeep was located partly in the eastbound lane of the highway. As Johnson exited her car and approached the wreckage, she saw Hays oddly climbing out of his driver's side window "backwards" and "bottom first." Tr. at 18-19. She observed that Hays had a lot of facial injuries and was bleeding quite a bit. Johnson was concerned with Hays's health and well-being and tried to get him to sit down and relax. Hays would not sit down, and Johnson noticed that he was talking on his cell phone and seemed to be panicking trying to gather

2

items from inside of the Jeep. Hays told Johnson that he "had to get his stuff out of there." *Id.* at 21. Hays did not inquire about the condition of the other driver. Hays placed items from the floorboard and cargo area of his car into a duffel bag and a black trash bag. At one point, while Hays was on the passenger side of the Jeep, Johnson observed Hays run over to the ditch near that side of the Jeep, squat down, and move his hands in the leaves on the ground.

Greene County Sheriff's Deputy Brad Deckard was the first law enforcement officer to arrive at the accident scene. Deputy Deckard spoke briefly with Hays and obtained his license, vehicle registration, and proof of insurance. Thereafter, Hays's mother and stepfather arrived on the scene. Hays's mother and stepfather helped Hays place the bags of items he had taken from the Jeep into their truck because "nobody had said anything to us that we couldn't." *Id.* at 189. Upon learning that the other driver, Allen, had died in the crash, Deputy Deckard read to Hays the implied consent form for fatal accidents. Hays refused to submit to a chemical test. Because Deputy Deckard did not believe that Hays was intoxicated, he chose not to seek a search warrant for a blood draw at that time. Hays was examined by an EMT and a paramedic at the accident site. They advised him multiple times that they needed to take him to a hospital to be evaluated for internal injuries, but Hays refused. Hays claimed that he would travel straight to Bloomington Hospital with his mother. At some point, Deputy Decker told Hays's mother that the Jeep would be impounded. Hays then left the scene. Officers later contacted Bloomington Hospital and

3

several other local hospitals, in order to locate Hays, to no avail. Hays had gone home with his mother and did not go to any hospital.

Greene County Sheriff's Department Detective Christopher McDonald arrived at the "chaotic" accident scene around 10:38 a.m. that morning. *Id.* at 123, 127. Detective McDonald began taking photographs and interviewing witnesses. Johnson told Detective McDonald about Hays's odd behavior of crawling out of his window backward and his panicked behavior of removing items from his vehicle. Johnson also informed Detective McDonald about how Hays had squatted down and put his hand in the leaves. As Detective McDonald was photographing the Jeep, he could see blood stains on the airbag and blood stains on the driver's seat. The Jeep's rear hatch was open, and Detective McDonald saw white powder in the cargo area. Detective McDonald then went to the area where Johnson had seen Hays put his hand in the leaves. Detective McDonald located a wooden spoon covered in white residue. Although the leaves around the spoon were damp, the white residue on the spoon was dry. Based upon his training and experience, Detective McDonald was aware that wooden spoons such as the one he found are commonly used in the manufacture of methamphetamine. Detective McDonald field-tested a portion of the residue on the spoon, and the residue tested positive for methamphetamine.

Both vehicles involved in the accident were badly damaged and immobile. The vehicles remained in their location for at least three hours while Allen's body was extracted from her vehicle and while accident reconstruction was completed. The Jeep was partially in the eastbound lane of State Road 445 and represented a safety hazard to motorists. Prior to

4

the removal of the vehicles for impoundment as evidence in a fatal crash, Detective McDonald conducted an inventory search of each vehicle pursuant to his department's policy. During the inventory search of the Jeep, Detective McDonald discovered several homemade capsules filled with white powder. Also, as he had already seen while photographing the vehicle, Detective McDonald noticed the blood drops on the driver's seat and airbag and the white powder in the open rear compartment.

Detective McDonald did not seize any of the items he observed during his inventory search, but instead sought and obtained a search warrant for the Jeep. Detective McDonald executed the warrant at the police impound lot on February 16, 2012. He cut the blood stains from the driver's seat and sent the samples to be tested for DNA and the presence of controlled substances. Detective McDonald applied for and obtained another search warrant to obtain buccal swabs for DNA from Hays. Detective McDonald was unable to locate Hays until April 3, 2012, at which time Detective McDonald executed the search warrant for Hays's DNA. The blood found on the driver's seat was thereafter confirmed to be Hays's blood and the blood sample tested positive for methamphetamine.

On April 16, 2012, the State charged Hays with class B felony operating a vehicle with a controlled substance in blood causing death and class A misdemeanor possession of marijuana. On December 21, 2012, Hays filed a motion to suppress evidence that methamphetamine was in his blood at the time of the accident, asserting that the search warrant used to obtain blood evidence from his vehicle was not supported by probable cause. Following a hearing held on January 18, 2013, the trial court denied Hays's motion to

suppress. Prior to trial, the trial court dismissed the class A misdemeanor charge. A three-day jury trial began on January 28, 2013. The jury found Hays guilty of class B felony operating a vehicle with a controlled substance in blood causing death. The trial court sentenced Hays to twenty years' imprisonment. This appeal ensued.

**Discussion and Decision**

Although Hays originally challenged the admission of the blood evidence through a pretrial motion to suppress, he now appeals following a jury trial and challenges the admission of that evidence at trial. Therefore, the issue before us is whether the trial court abused its discretion in admitting the evidence at trial. *Lindsey v. State*, 916 N.E.2d 230, 238 (Ind. Ct. App. 2009), *trans. denied* (2010). A trial court has broad discretion in ruling on the admission or exclusion of evidence. *Palilonis v. State*, 970 N.E.2d 713, 726 (Ind. Ct. App. 2012), *trans. denied*. An abuse of discretion occurs when the trial court's ruling is clearly against the logic, facts, and circumstances presented. *Id*. When reviewing the admissibility of evidence, we do not reweigh evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Woodson v. State*, 966 N.E.2d 135, 226 (Ind. Ct. App. 2012), *trans. denied*. "We must also consider uncontested evidence favorable to the defendant." *Id*.

Hays concedes that he has waived any error in the admission of the evidence as, although a motion to suppress was filed challenging the admissibility of evidence that methamphetamine was found in the blood sample taken from the Jeep, no objection was

made when that evidence was admitted at trial. Tr. at 532-36, 572-74.[1] "A contemporaneous objection at the time the evidence is introduced at trial is required to preserve the issue for appeal, whether or not the appellant has filed a pretrial motion to suppress." *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010). The purpose of the contemporaneous objection rule is to allow the trial judge to consider the issue in light of any "fresh developments and also to correct any errors." *Id*.

Here, not only did Hays fail to object to the trial court's admission of the evidence he now attempts to challenge on appeal, he affirmatively stated that he had "no objection" to its admission. Tr. at 532, 536, 574. Nevertheless, he attempts to avoid waiver of his claim by invoking the fundamental error doctrine. A claim that has been waived by a defendant's failure to object at trial can be reviewed on appeal if the reviewing court determines that fundamental error occurred. *Brown*, 929 N.E.2d at 207. As our supreme court has explained,

> The fundamental error exception is extremely narrow and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. The error claimed must either make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process. This exception is available only in egregious circumstances.

---

[1] We note that although Hays did object to Detective McDonald's testimony regarding what he found during both his inventory and subsequent warranted search of the Jeep, *see* Tr. at 441 and 444, Hays did not object when evidence that methamphetamine was found in the blood sample taken from the Jeep was introduced and admitted at trial. Curiously, the State does not acknowledge Hays's concession in his appellant's brief that he failed to make a contemporaneous objection to admission of the blood test evidence.

*Id*. (citations and quotation marks omitted). The *Brown* court noted that "an error in ruling on a motion to exclude improperly seized evidence is not per se fundamental error." *Id*. "Indeed, because improperly seized evidence is frequently highly relevant, its admission ordinarily does not cause us to question guilt." *Id*. When the only basis for questioning a conviction lies not in doubt as to whether the defendant committed the crime, but rather in a challenge to the integrity of the judicial process, we will not consider "that admission of unlawfully seized evidence ipso facto requires reversal." *Id*.

In *Brown*, the court concluded that the defendant's claimed error regarding the admission of evidence did not rise to the level of fundamental error because there was no claim of fabrication of evidence or willful malfeasance on the part of investigating officers, or that the evidence was not what it appeared to be. *Id*. The court further concluded that, where a defendant makes no contention that he did not receive a fair trial, other than his assertion that the evidence was the product of an unconstitutional search and seizure, fundamental error will not be found. *Id*.

Here, Hays challenges the admission of what he claims to be unlawfully seized evidence, arguing that the search warrant that was executed on his vehicle to obtain the evidence was not supported by probable cause because the information used in the probable cause affidavit was gathered during an improper inventory search of the vehicle. This basis for challenging his conviction does not cast doubt as to whether Hays committed the crime, but is merely a challenge to the integrity of the judicial process. As in *Brown*, there is no claim here of fabrication of evidence or willful malfeasance on the part of the investigating

officers.  There is similarly no contention that the blood evidence is somehow not what it appears to be.  Accordingly, the claimed error does not rise to the level of fundamental error. We therefore decline to review Hays's challenge to the admissibility of the blood evidence and affirm his conviction.

Affirmed.

BARNES, J., and PYLE, J., concur.