Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 11 2014, 6:28 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JESSE R. POAG**
Newburgh, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| RICHARD BOYLLS, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 82A05-1306-CR-307 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable Robert J. Pigman, Judge
Cause No. 82D02-1208-FB-889

**February 11, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Richard Boylls appeals his conviction for class B felony dealing in methamphetamine.[1] The sole issue presented for our review is whether the trial court abused its discretion when it admitted evidence obtained during a warrantless search of Boylls's house. Finding no abuse of discretion, we affirm.

**Facts and Procedural History**

On August 3, 2012, Vanderburgh County Sheriff's Deputy Joshua Patterson was on routine patrol on Big Cynthiana Road in Evansville. His windows were cracked open, and as he drove through an intersection, he detected a strong chemical odor. He turned his police vehicle around, drove back to the area, and summoned another officer, Deputy Tony Toopes, to the scene. Deputy Toopes also detected the strong chemical odor. Based upon their training and experience, both officers recognized the odor as that associated with the manufacture of methamphetamine. The two deputies parked their police vehicles and set out on foot to investigate the source of the odor.

The deputies determined that the odor was emanating from Boylls's house. Boylls's small house was located approximately forty to forty-five feet from his aunt's larger home on the same property. The deputies observed lights on in Boylls's house and heard voices of what they believed could be two to four people inside. The chemical odor emanating from the house was "really, really pungent" and "overwhelmingly strong." Tr. at 128-29. Sounds

---

[1] Indiana Code Section 35-48-4-1.1 provides in pertinent part that a person who knowingly or intentionally manufactures methamphetamine, pure or adulterated, commits class B felony dealing in methamphetamine.

2

and smells coming from the home were especially prominent due to the "large inch to two and a half inch gaps" between the windows and the window frames of the house. *Id.* at 131.

Deputy Toopes knocked on the front door of the house, identified himself, and asked Boylls to come outside. Boylls responded from inside the home and stated that he was not coming outside. The deputies continued to speak to Boylls from outside the house as they walked around the perimeter. Deputy Toopes observed a large open trash can outside the back door. He looked down inside the can and saw empty pseudoephedrine packages and other items he believed to be consistent with the manufacture of methamphetamine. Other officers who arrived at the scene went to the adjacent home on the property to speak to Boylls's aunt.

Boylls continued to refuse repeated requests to exit the house. Deputy Toopes informed Boylls that officers believed that he was cooking methamphetamine inside the house and that Boylls and anyone else inside needed to come out. Boylls was very concerned about his dog and wanted reassurances that officers would not harm his dog. After an exchange that lasted "quite some time," Boylls exited the house, closing the door behind him. *Id.* at 133. Officers temporarily placed Boylls in handcuffs. Boylls told officers that no one else was inside the house. Because officers had earlier heard additional voices and also heard running and banging noises from inside, they continued to knock and request for any occupants to exit the house. After a few minutes, another individual, Ross Flint, exited the house. Officers then permitted Boylls's aunt to call for Boylls's dog, and the dog exited the house. Because officers were still concerned that others could be inside, they entered the

house to conduct a protective sweep. Officers were inside the house for approximately four minutes and looked only in areas where a person could hide. No other individuals were found inside the house.

After exiting the house, Deputy Toopes removed Boylls's handcuffs, gave him a *Miranda* and *Pirtle* advisement of rights,[2] and asked him for consent to search the house. Boylls verbally consented and signed a written consent to search. Officers from the drug task force arrived and searched the house, finding numerous items consistent with the manufacture of methamphetamine.

The State charged Boylls with class B felony dealing in methamphetamine, class D felony possession of precursors, class D felony maintaining a common nuisance, class A misdemeanor possession of paraphernalia, and class B misdemeanor criminal recklessness. Boylls subsequently filed a motion to suppress evidence obtained during the search of his house. His motion to suppress was denied following a hearing. A two-day jury trial began on April 29, 2013. At the outset, the State moved to dismiss four of the charged counts and proceeded to trial solely on the dealing charge. During trial, Boylls renewed his objection to the admission of evidence obtained during the search. At the conclusion of the trial, the jury found Boylls guilty of class B felony dealing in methamphetamine. This appeal followed.

## Discussion and Decision

Boylls contends that all evidence seized during the warrantless search of his house should have been excluded as products of an illegal search. Although Boylls originally

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966); *Pirtle v. State*, 263 Ind. 16, 323 N.E.2d 634 (1975).

challenged the admission of the evidence through a pretrial motion to suppress, he now appeals following a jury trial and challenges the admission of that evidence at trial. Therefore, the issue before us is whether the trial court abused its discretion in admitting the evidence at trial. *Lindsey v. State*, 916 N.E.2d 230, 238 (Ind. Ct. App. 2009), *trans. denied* (2010). A trial court has broad discretion in ruling on the admission or exclusion of evidence. *Palilonis v. State*, 970 N.E.2d 713, 726 (Ind. Ct. App. 2012), *trans. denied*. An abuse of discretion occurs when the trial court's ruling is clearly against the logic, facts, and circumstances presented. *Id*. When reviewing the admissibility of evidence, we do not reweigh evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Woodson v. State*, 966 N.E.2d 135, 226 (Ind. Ct. App. 2012), *trans. denied.* We also consider uncontested evidence favorable to the defendant. *Id*.

We begin by noting that the challenged evidence was seized during a warrantless search of Boylls's house that occurred after Boylls gave officers both verbal and written consent to search. The Fourth Amendment to the United States Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated …." As a general rule, warrantless searches are "per se unreasonable under the Fourth Amendment, subject to a few specifically established and well-delineated exceptions." *Holder v. State*, 847 N.E.2d 930, 935 (Ind. 2006). "One well-recognized exception to the warrant requirement is a voluntary and knowing consent to search." *Crocker v. State*, 989 N.E.2d 812, 820 (Ind. Ct. App. 2013) (quoting *Krise v. State*, 746 N.E.2d 957, 961 (Ind. 2001)), *trans. denied*.

5

We find dispositive here that Boylls does not challenge the validity of his verbal and written consent to search his house. Indeed, he focuses solely on the reasonableness of the officers' protective sweep of the house that occurred prior to his consent. However, as noted by the State, Boylls makes no claim or argument that the officers' conduct somehow "vitiated his subsequent consent." Appellee's Br. at 7. Thus, the evidence he now challenges was obtained pursuant to a valid exception to the warrant requirement. Accordingly, Boylls has failed to establish a violation of his Fourth Amendment rights.[3] The trial court did not abuse its discretion when it admitted the evidence.

Affirmed.

BAKER, J., and NAJAM, J., concur.

---

[3] Boylls similarly fails to challenge the validity of his consent pursuant to Article 1, Section 11 of the Indiana Constitution.