## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 28 2017, 9:38 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Terri Lynn Davis,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | April 28, 2017<br><br>Court of Appeals Case No.<br>84A01-1609-CR-2237<br><br>Appeal from the Vigo Superior Court<br><br>The Honorable Michael Rader, Judge<br><br>Trial Court Cause No.<br>84D05-1604-CM-1023 |

**Brown, Judge.**

[1] Terri Lynn Davis appeals her conviction for driving while intoxicated while endangering a person as a class A misdemeanor. Davis raises one issue which we revise and restate as whether the evidence is sufficient to sustain her conviction. We affirm.

### Facts and Procedural History

[2] On April 16, 2016, at around 8 p.m., Indiana State Police Trooper Brian Fyfe received a dispatch from Clay County of a red Kia "swerving all over the roadway" on Interstate 70 ("I-70"). Transcript 2 at 9. While Trooper Fyfe was still in Terre Haute, another call came in from Vigo County about the vehicle. That call indicated that the vehicle was driving over the road's rumble strips and then returning to the median side of the road, driving in both lanes, driving on the shoulder, and driving on the line. Trooper Fyfe proceeded to I-70 to look for the vehicle.

[3] While waiting for the Kia to pass him on the interstate, a third call came in stating that the vehicle had exited at mile marker 11 on I-70 and State Road 46. Trooper Fyfe drove to that exit and came upon a red Kia parked at a gas station and noticed that the front right tire was partially on the top of the yellow curb and parked in a manner that did not line up with the position of the gas pumps. He parked behind the vehicle and entered the gas station.

[4] Inside, Trooper Fyfe looked for the driver and learned from an employee that the driver, later identified as Davis, was in a bathroom stall and there was a prescription pill bottle on the floor. Trooper Fyfe waited for about fifteen

minutes for Davis to exit the bathroom.  After she did so, Trooper Fyfe asked her if she had been driving the red Kia and she indicated that she had.  He asked Davis if they could step outside, and she agreed.

[5] Outside, Davis had a difficult time balancing, and she leaned against her vehicle.  Trooper Fyfe observed that her eyes were bloodshot and really glassy.  He asked her if she had been driving on I-70 and if there would be any reason for people to have called the police about her driving.  Davis stated that she was traveling on I-70 from Martinsville to Kansas to meet somebody and she was having trouble keeping her eyes open and was seeing spots.  Davis also said that was she driving over the rumble strips in order to stay awake and that she had taken prescription medication, including Xanax, Ambien, and Vicodin, and had one or more drinks in Martinsville just before leaving.

[6] Davis gave Trooper Fyfe permission to search her vehicle, and he found a gas station cup which smelled of alcohol that Davis explained was a "Budweiser StrawberRita" which "she had used [] to wash her medications down." *Id.* at 17.  Trooper Fyfe also recovered prescription bottles for the drugs that Davis had said she had taken that day.

[7] After the search, Trooper Fyfe administered three field sobriety tests, each of which Davis failed, and she exhibited all six clues of intoxication on the horizontal gaze nystagmus test.  She also exhibited seven of eight clues on the nine-step walk and turn test and all four clues on the one-leg-stand test, and Trooper Fyfe decided to end the test early because she was having a hard time

keeping her balance. He administered a portable breath test which indicated the presence of alcohol. Based on his observations, his training, experience, education, and background as a trooper, Trooper Fyfe made a determination that Davis was impaired. He offered her a chemical test, she consented, and he drove her to the hospital for a blood draw. Trooper Fyfe decided not to administer a breath test because that test does not test for intoxicants other than alcohol. While at the hospital, Davis kept falling asleep and had to be woken up by the doctors and nurses.

[8] On April 18, 2016, the State charged Davis with Count I, operating a vehicle while intoxicated endangering a person as a class A misdemeanor; Count II, operating a vehicle with a Schedule I or II controlled substance or its metabolite in the body as a class C misdemeanor based on THC; and Count III, operating a vehicle with a Schedule I or II controlled substance or its metabolite in the body as a class C misdemeanor based on opiates.

[9] On August 31, 2016, the court held a bench trial at which Davis testified that "[e]very day for the last ten years, I take my medication." *Id.* at 32. She also testified that she had a knee brace she was ordered to wear by a doctor except when she was driving. The court found Davis guilty on Count I and dismissed the remaining charges.

## Discussion

[10] The issue is whether the evidence is sufficient to sustain Davis's conviction for operating a vehicle while intoxicated while endangering a person as a class A

misdemeanor. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess witness credibility or reweigh the evidence. *Id.* We consider conflicting evidence most favorably to the trial court's ruling. *Id.* We affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (quoting *Jenkins v. State*, 726 N.E.2d 268, 270 (Ind. 2000)). It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* at 147. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.*

[11] The offense of operating a vehicle while intoxicated is governed by Ind. Code § 9-30-5-2, which provides that "a person who operates a vehicle while intoxicated commits a Class C misdemeanor," but "[a]n offense . . . is a Class A misdemeanor if the person operates a vehicle in a manner that endangers a person."

[12] Davis argues that the State failed to prove that she was intoxicated. "Intoxicated" means under the influence of alcohol, a controlled substance or a combination of them "so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties." Ind. Code § 9-13-2-86. "The State need not present separate proof of impairment of action, impairment of thought, and loss of control of faculties to establish an individual's intoxication." *Woodson v. State*, 966 N.E.2d 135, 142 (Ind. Ct. App.

2012), *trans. denied*. Rather, a person's impairment is to be determined by considering his capability as a whole, not component by component, such that impairment of any of these three abilities equals impairment. *Id.* Such impairment can be established by evidence of: (1) the consumption of a significant amount of alcohol; (2) impaired attention and reflexes; (3) watery or bloodshot eyes; (4) the odor of alcohol on the breath; (5) unsteady balance; (6) failure of field sobriety tests; and (7) slurred speech. *Id.* (citing *Fought v. State*, 898 N.E.2d 447, 451 (Ind. Ct. App. 2008)). Proof of intoxication does not require proof of a Blood Alcohol Content level. *Ballinger v. State*, 717 N.E.2d 939, 943 (Ind. Ct. App. 1999); *Jellison v. State*, 656 N.E.2d 532, 535 (Ind. Ct. App. 1995).

[13]    Davis argues that the State did not present evidence that she consumed a significant amount of alcohol or of her blood alcohol content and that "[t]he only evidence that [she] had possibly consumed alcohol that day was a cup Trooper Fyfe saw sitting in the center console of Davis's car that had alcohol in it," in which she testified at trial "that the cup . . . was trash from an earlier party." Appellant's Brief at 10. She asserts that the only signs of impairment included her unsteady balance and failure of the field sobriety tests, which she explained "were a result of her physical disability and not intoxication." *Id.* She also argues that, while she acknowledges she was driving erratically, she "indicated that she was tired and intentionally hitting the rumble strips to stay alert . . . ." *Id.* The State contends that Davis ignores evidence that she had trouble keeping her eyes open, her eyes were bloodshot and glassy, she was

observed "swerving all over the roadway," and that "her total failure of the horizontal gaze nystagmus test was not related to her knee issues." Appellee's Brief at 12. It also points to her admission to Trooper Fyfe that she had consumed drugs and alcohol before starting her drive.

[14] The record reveals that the initial dispatch received was a report of a red Kia "swerving all over the roadway" on I-70, and that a total of three calls regarding Davis's vehicle were received. Transcript 2 at 9. The second call reported that the Kia was driving over the road's rumble strips and then returning to the median side of the road, driving in both lanes, driving on the shoulder, and driving on the line. When Trooper Fyfe came upon the gas station where Davis was parked, he observed that the Kia was parked with the front right tire partially on the top of the yellow curb and in a manner that did not line up with the position of the gas pumps. The gas station employee told Trooper Fyfe that Davis was in the bathroom and that there was a prescription pill bottle on the floor. Davis admitted to driving the Kia.

[15] Upon exiting the gas station, Trooper Fyfe observed that she had a difficult time balancing and leaned against her vehicle and that her eyes were bloodshot and really glassy. Davis indicated that she was having trouble keeping her eyes open and was seeing spots. She reported driving over the rumble strips in order to stay awake and that she had taken prescription medication, including Xanax, Ambien, and Vicodin, and had one or more drinks in Martinsville just before leaving. Trooper Fyfe searched the vehicle and recovered the cup which

smelled of alcohol that Davis explained was a "Budweiser StrawberRita" which "she had used [] to wash her medications down." *Id.* at 17.

[16] Davis failed three field sobriety tests, including the horizontal gaze nystagmus test, the step walk and turn test, and the one-leg-stand test, which Trooper Fyfe had to end prematurely because Davis was having trouble keeping her balance. Trooper Fyfe also administered a portable breath test which indicated the presence of alcohol. Trooper Fyfe determined that Davis was impaired based on his observations of her, his training, experience, education, and his background as a trooper. While at the hospital for the chemical test, Davis kept falling asleep and had to be woken up by the doctors and nurses. We find that such testimony is sufficient to support Davis's conviction. *See Woodson*, 966 N.E.2d at 142 (citing *Wright v. State*, 772 N.E.2d 449, 460 (Ind. Ct. App. 2002) ("With respect to the sufficiency of the evidence upon the element of intoxication, it is established that a nonexpert witness may offer an opinion upon intoxication, and a conviction may be sustained upon the sole testimony of the arresting officer.")). Davis's arguments are "little more than a request to reweigh the evidence, which we will not do." *See id.*

[17] Based upon the record, we cannot say that the inferences made by the fact finder were unreasonable. Thus, we conclude that evidence of probative value exists from which the court could have found Davis guilty beyond a reasonable doubt of operating a vehicle while intoxicated endangering a person as a class A misdemeanor. *See Broderick v. State*, 249 Ind. 476, 479-480, 231 N.E.2d 526, 527-528 (1967) (holding that the jury was warranted in finding that the

defendant was intoxicated where two witnesses testified that in their opinion the defendant was intoxicated, defendant's car smelled of alcohol, defendant weaved from side to side of the road, and defendant's speech was "thick"), *cert. denied*, 393 U.S. 872, 89 S. Ct. 161 (1968); *Fought*, 898 N.E.2d at 451 (holding that the evidence was sufficient to sustain the defendant's conviction for public intoxication where police officers smelled a strong odor of alcohol emanating from the interior of the vehicle and from the defendant's breath, the defendant was uncooperative, unsteady, slurred his speech, and his eyes were red, watery, and bloodshot); *Hall v. State*, 174 Ind. App. 334, 336-337, 367 N.E.2d 1103, 1106-1107 (1977) (holding that the evidence was sufficient to sustain the defendant's conviction for driving while under the influence of liquor where witnesses who saw the defendant immediately following the accident believed that she was intoxicated, the defendant's car smelled of alcohol, and her vehicle was "driving very fast" and "out of control").

### *Conclusion*

[18] For the foregoing reasons, we affirm Davis's conviction for operating a vehicle while intoxicated endangering a person as a class A misdemeanor.

[19] Affirmed.

May, J., and Pyle, J., concur.