## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 21 2018, 10:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David L. Joley
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Laura R. Anderson
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Daniel T. Perrey, *Appellant-Defendant,* v. State of Indiana, *Appellee-Plaintiff* | December 21, 2018 Court of Appeals Case No. 18A-CR-1498 Appeal from the Allen Superior Court The Honorable Wendy Davis, Judge The Honorable Samuel Keirns, Magistrate Trial Court Cause No. 02D04-1707-F6-772 |

**Altice, Judge.**

## Case Summary

[1] After finding that Daniel T. Perrey violated the terms of his placement in community corrections, the trial court revoked his placement and ordered that he serve his suspended sentence in the Indiana Department of Correction (DOC). On appeal, Perrey argues that the evidence is insufficient to prove that he violated the conditions of his placement in community corrections.

[2] We affirm.

## Facts & Procedural History

[3] On December 14, 2017, Perrey pled guilty to Level 6 felony unlawful possession of a syringe and Class A misdemeanor resisting law enforcement. On January 5, 2018, the trial court sentenced Perrey to concurrent sentences of one year and 183 days with one year suspended to probation for the felony conviction and 183 days for the misdemeanor conviction.

[4] On February 5, 2018, the State filed a petition to revoke Perrey's probation. After Perrey admitted to violating the terms of his probation, the trial court revoked his probation and ordered that he serve his suspended sentence in Allen County Work Release. Perrey was admitted to the work release program on March 13, 2018. On that date, Perrey signed an Inmate Agreement that set forth the conditions for his participation in the work-release program. Rule No. 8 provides:

> I will not use, possess or introduce into the Work Release Center any weapons, alcoholic beverages, narcotics, or drugs (unless under Doctor's orders) or anything relating to their use. I will not have K2 or any Synthetic form of mood/behavior altering

substances in my possession and I will refrain from using such items.

*Appellant's Appendix Vol. 2* at 29.

[5] On April 13, 2018, the Allen County Sheriff's Department filed a petition to revoke Perrey's work-release placement. The trial court held a hearing on June 7, 2018. At the hearing, Phil Goodrich, Perrey's third-shift supervisor, testified that during the shift that began at 11:00 p.m. on March 26, he was called over to the machine Perrey was working on because Perrey "didn't seem like he was acting right." *Transcript* at 7. As he approached, Goodrich observed that Perrey "had a lot of swaying going on" and that he had "bloodshot, red, puffy eyes." *Id.* at 7, 9. Goodrich asked Perrey if he was okay and Perrey had difficulty responding, communicating with only grunts and nods. Goodrich told Perrey to go to Goodrich's office so they could talk about his physical condition. It took Perrey about seven minutes to walk fifty feet, and as he walked he was swaying and falling down. Goodrich believed that Perrey could not perform his job duties and that he posed a safety risk given his physical condition. When Goodrich asked Perrey for his work-release card, Perrey struggled for ten minutes to get the card out of his wallet. Based on his observations, Goodrich "absolutely" believed that Perrey was under the influence of something intoxicating. *Id.* at 9.

[6] Goodrich eventually contacted Shawn Oetinger, a confinement officer with Allen County work release. Oetinger had been with the Allen County Sheriff's Department for fourteen years, with five of those years served with work

release. Goodrich explained Perrey's demeanor to Oetinger, who then contacted the work-release director to determine what course of action should be followed. The director advised Oetinger to pick up Perrey and that, if Oetinger believed Perrey was still under the influence, Oetinger was to take Perrey to jail. When Oetinger arrived at Perrey's place of employment, Perrey was slumped over in a chair in Goodrich's office. Oetinger woke Perrey and noted that his eyes were "completely bloodshot" and his "pupils were huge." *Id*. at 14. When questioned, Perrey denied having taken anything. Perrey then became argumentative toward Goodrich and Oetinger to such an extent that Oetinger felt it necessary to place Perrey in handcuffs. Oetinger testified that he believed Perrey was under the influence of something that would cause him to be intoxicated. Oetinger then transported Perrey to jail.

[7] Perrey testified in his own defense and denied that he had taken any illegal, controlled substances during his work shift. He also denied having taken any prescription medication. Perrey argued to the court that his demeanor was just as consistent with a neurological disorder or sleep deprivation as it was to intoxication. The court disagreed, noting the complete lack of evidence that Perrey had a neurological disorder or that he was tired. The court found that "[e]verything [Goodrich] described is completely in line with somebody who is intoxicated and under the influence of a mood or behavior altering substance because certainly [Perrey's] mood and behavior was altered." *Id*. at 19. The court revoked Perrey's placement on work release and ordered that he be committed to jail for a period of one year. Perrey now appeals.

**Discussion & Decision**

[8]     We review a decision to revoke placement in a community corrections program in the same manner as a decision to revoke probation. *Cox v. State*, 706 N.E.2d 547, 549 (Ind. 1999). "A probation hearing is civil in nature and the State need only prove the alleged violations by a preponderance of the evidence." *Id*. at 551. We will not reweigh the evidence or judge the credibility of witnesses and will consider all the evidence most favorable to the judgment of the trial court. *Id*. "If there is substantial evidence of probative value to support the trial court's conclusion that a defendant has violated any terms of probation, we will affirm its decision to revoke probation." *Id*.

[9]     Perrey argues that the opinion testimony of Goodrich and Oetinger was insufficient to prove by a preponderance of the evidence that he was under the influence of an intoxicating substance because neither testified to having any training in detecting intoxication. It has long been established, however, that a non-expert witness may offer an opinion on intoxication. *See Woodson v. State*, 966 N.E.2d 135, 142-43 (Ind. Ct. App. 2012), *trans. denied*; *Wright v. State*, 772 N.E.2d 449, 460 (Ind. Ct. App. 2002) (noting that "[w]ith respect to the sufficiency of the evidence upon the element of intoxication, it is established that a non-expert witness may offer an opinion upon intoxication").

[10]    Here, Goodrich testified that Perrey exhibited classic signs of intoxication, including red, bloodshot eyes, dilated pupils, swaying, difficulty standing and walking, slow movements, and poor manual dexterity. When questioned,

Perrey used only grunts and nods to communicate. These observations led Goodrich to opine that Perrey was under the influence of an intoxicating substance. Oetinger likewise observed similar objective indications of intoxication. Further, the trial court clearly indicated that it found the testimony of Goodrich and Oetinger more credible than Perrey's self-serving statement. Assessing the credibility of the witnesses and weighing the evidence is within the province of the trial court. We will not second guess the trial court in this regard. The evidence is sufficient to support the trial court's finding that Perrey was intoxicated and under the influence of a mood or behavior altering substance. This finding supports the court's decision to revoke Perrey's placement in community corrections. We therefore affirm the trial court's decision.

[11] Judgment affirmed.

[12] Najam, J. and Pyle, J., concur.